McIlvaine, J.
The cases before us involve grave and important questions of constitutional law — of legislative power as conferred upon the general assembly of the state, by the constitution. Was this enactment within the scope of that power ?
The exact scope of that power is the difference between powers granted, both generally and specifically, by the constitution, and the limitations thereon, found in other provisions of the constitution, in the constitution of the United States and in the laws of Congress passed in pursuance thereof.
The general grant is found in section 1, article 2, of the constitution. It reads thus: “ The legislative power of this state shall be vested in a general assembly, which shall consist of a Senate and House of Representatives.”
When considered independently of other parts of the constitution, there can be no doubt as to the meaning of this section. It is a fundamental principle in our. system of state government, that the people, who, in an organized, representative body, framed the constitution, and as individual citizens ratified and adopted it, are the source of all political power, and in fact, constitute the state. This section, therefore, is a declaration that all the power, legislative in character, of the *408 people within the limits of the territory of Ohio and organized into a government under this constitution, is vested in the general assembly.
That the passage of this enactment by the general assembly Avas the exercise of a power legislative in character, is an indisputable proposition, and if section 1, article 2, Avere the only provision of the constitution to bo considered, the validity of the statute would never be questioned. And further, Avithout stopping to inquire into the inherent nature of legislative power, it is certainly safe to say, that in the absence of conventional limitations, the power would bo ample for the making of laAArs absolutely prohibiting all traffic in intoxicating liquors. To maintain this doctrine it is not necessary to hold that the right to traffic generally, in all subjects of trade, is subject to legislative control. It is enough to hold that a traffic which tends to evil, and that continually, is qnder the absolute control of the general assembly. Surely it' Avas Avithin the power of the people avIio made the constitution, and who gave to the general assembly all the power over the traffic which they possessed, unless we can find in some other part of the constitution a limitation upon the terms of this grant of power.
There is such a limitation, however, in the 18th section of the schedule (adopted as a part of the constitution by a separate vote of the people), to wit: “No license to traffic in intoxicating liquors shall hereafter be granted in this state; but the general assembly may, by law, provide against evils resulting therefrom.” The first clause is an express and positive restriction upon the poAver of legislation ; and by the last clause, the power is restricted, by implication, to making provisions against evils resulting from the traffic.
It has been claimed, because'this last clause is, in form, a grant of power, that it confers the only power possessed by the general assembly over the subject of intoxicating liquors, on the theory, that where -specific power over a particular subject is given, it will be presumed to be exclusive, and withdraw the subject from a more general grant of power. We are inclined, however, to think that this clause was inserted for the purpose, in addition to that above named, to repel an *409 inference (from the facts that no restraint was imposed upon the traffic by the constitution, and legislative restraint by license was inhibited), that the intention was to withdraw the traffic from legislative control, as license laws, before the adoption of the constitution, were the only means used for the restraint or regulation of the traffic.
It would make no difference in the solution of «the question now under consideration whether the authority of the' general assembly to pass tiffs statute be traced to the general grant of legislative power, or to section 18th of the schedule. In either case, if it be not a license law, or in eontrovention .of some other provision of the constitution, the validity of the statute must be maintained.
It has been said that the power of the general assembly over the traffic in intoxicating liquors is to regulate and not to prohibit. Miller & Gibson v. The State, 3 Ohio State, 475. With this construction of the constitution we agree. “The general assembly may, by law, provide against evils resulting therefrom.” It seems to ns to be fairly implied from these terms that, in the judgment of the framers of the constitution, the traffic in intoxicating liquors might be carried on without resulting in evil, and to that extent it should not be prohibited. Such traffic would undoubtedly embrace sales for mechanical, medicinal, and sacramental purposes; and upon such traffic this statute has imposed no burden, whatever. Section 6 of the Act.
On the other hand, it is expressly recognized in this” clause of the constitution, that evils do or may result from the traffic in intoxicating liquors; and the general assembly may, by law, provide against them. The language of the 18th section does not limit the power to the making of provisions for the purpose of mitigating such evils, or diminishing them. The power is equal to the providing of means to prevent evils resulting. To so regulate the traffic that no evil will result therefrom. The provisions, which maybe made “by law,” are not prescribed. True, they must be directed against evils resulting from the traffic, and they may not be such as are inhibited by any provision of the constitution. Subject, how *410 ever, to these limitations, the whole scope of legislative power is given to the general assembly to be exercised at its discretion. Hence its judgment in the selection of means, within such scope of authority, is not subject to be reviewed by this court.
Undoubtedly the evils contemplated by the constitution, as resulting from the traffic in intoxicating liquors, are those ■which result from the sale and use of such liquors as a beverage : and such were the evils against which, this statute was intended, in some degree, to provide.
If, in the judgment of the general assembly, it be necessary, in order to prevent evils resulting from the traffic, that the sale and use of intoxicating liquors as a beverage, be absolutely-prohibited, we can see no constitutional ground upon which such exercise of its judgment and discretion can be reviewed. The views entertained by the majority of the court, as above expressed, are strongly supported by the decision of this court in Burckholter v. McConnellsville, 20 Ohio St. 308, sustaining an ordinance prohibiting ale, beer, and porter houses within the corporate limits of the village of McConnellsville. The ordinance was passed by the village council under authority granted by the general assembly. It appears to me to be very plain, that power in the general assembly to authorize municipalities to prohibit ale, beer, and porter houses within their limits, involves the power to prohibit the sale of ale, beer, and porter as a beverage. True, the statute under consideration was not intended to operate as a prohibition of the sale or use of such liquors for drinking purposes; but only as a restraint upon the traffic, whereby the evils resulting therefrom might in some degree be diminished. The point intended to be made is, if the power to forbid the sale and use of such liquors as a beverage exists, the power to pass this statute cannot be doubted.
It is claimed, however, that the burdens imposed by this statute upon the business of trafficking in intoxicating liquors cannot, in any degree, operate as a provision against evils resulting from the traffic. Several answers may be made to this claim. 1. It is contrary to the declared opinion and judgment of the general assembly, to whom alone the con *411 stitution has given the right to select the means to be provided. 2. The statute cannot be held invalid on such grounds, unless the declared judgment and purpose of the general assembly be plainly and palpably fallacious and illusory. 3. "We think the direct tendency of these burdens is to reduce the number of places where such traffic is conducted, and the number of persons engaged in it, and per consequence, the quantity of liquors drunk. lienee it is impossible to say that the amount of evil will not be diminished.
Does the statute contravenecthe first clause of the 18th section of the schedule, “No license to traffic in intoxicating liquors shall hereafter be granted in this state ?”
This question arises on the last clause of section two of the statute. The whole section reads thus:
“ Sec. 2. That said assessments, together with any increase thereof, as penalty thereon, shall attach and operate as a lien upon the real property on and in which such business is conducted, as of the fourth Monday of April, each year, and shall be paid on or before June 20, following: Provided, where any such business shall be commenced in any year after said Monday, said assessment shall be proportionate in amount to the remainder of the assessment year, except that it shall in no case be less than $25, and the same shall attach and operate.as alien, as aforesaid, at the date of, and be paid within ten days after such commencement; and that whoever shall engage or continue in the business aforesaid of selling intoxicating liquoi'S in or upon land or premises, not owned by him, and without the written consent of the owner thereof, shall be held guilty of a misdemeanor, and liable to be indicted and punished by a fine not exceeding $100, nor less than $25, or by imprisonment in the county jail not exceeding ten days, or both, at the discretion of the court; and each day’s continuance upon such premises shall be an additional offense.”
It is very clear to a majority of the court .that the last clause of this section is so disconnected from the balance of the statute, that if stricken out, that which would remain, is complete in itself, and would be capable of being enforced in accordance with the legislative intent. The whole statute does *412 not, on its face, afford any reason to presume that the balance of the statute would not have been passed if this clause had been omitted. Hence, both upon reason and authority, the balance of the statute must be held, as far as this question is concerned, to be valid, though this clause be in contravention of the “ no license ” clause of the Constitution. See Cooley’s Constitutional Limitations (5th ed.) pages 211 to 216, inclusive, and authorities therein cited.
Upon this view, further consideration of this question might be, with propriety, omitted from this opinion, as the cases before us do not depend upon the validity or invalidity of the second section of the statute. .
But inasmuch as the validity of this clause of the statute has been fully and ably discussed by Counsel, and a large number of the citizens of the state, are personally, interested in the question, I have concluded to state the views entertained by a majority of the court, after full consideration.
Counsel, who have argued against the validity of the statute, have relied with much confidence upon the recent decision of this court in the case of The State v. Hipp, 38 Ohio St. 199, in which a statute in many respects similar to the one now before us, was held to be unconstitutional and void.
While there is no disposition on the part of the court to overrule the decision in that case, or to depart from the definition of a license as therein laid down, we find that there are fundamental differences between the two statutes in relation to provisions upon which this question depends.
Of the statute under consideration in Hip p’s case, commonly called the Pond law, it was very' clearly and correctly stated By Okcy, C. J., in delivering the opinion of the court, that with the exception of physicians, vendors of pure alcohol for mechanical purposes, and druggists, “ the act is,' to all persons then engaged or thereafter engaging in the traffic in liquors, who fail to comply with its terms, a stringent prohibitory liquor law.” The terms required were the payment of certain sums of money and the execution of certain bonds. And again, on page 288 of the report, the Chief Justice said: “In substance, it (the statute) is as to all dealers, who fail to comply *413 with its provisions, a stringent prohibitory liquor law, and as to all dealers who do so comply, it grants the privilege, in the future, to deal in such liquors to the extent not prohibited by previously existing laws. In legal effect, it is an act granting to those who comply with its provisions, licenses to traffic in intoxicating liquors, to the exclusion of all other dealers, and hence it is in conflict with the constitutional provision under consideration.” Such was a brief, but clear statement of the grounds upon which the decision was based.
A license is essentially the granting of a special privilege to one or more persons, not enjoyed by citizens generally, or, at least, not enjoyed by a class of citizens to which the licensee belongs. A common right is not the creature of a license law. The removal of individual disabilities, as to all persons, is not the granting of a license. The right to traffic in intoxicating liquors for the purpose of drinking, before the passage of the Scott law, was the common right of each and every citizen of the state. It so remained after its passage. No citizen or class of citizens is required, by this statute, to perform any condition before the right to so traffic shall vest in him. The right was not takén away from him. How then can it be said that the right to so traffic is a special privilege to any one under this statute ?
It is argued that the statute deprives a class of persons, to wit, all those who do not own real estate, of the right to continue or engage in the traffic, and the right is granted back to those of the class only who obtain the written consent of the owner of real estate to conduct the traffic on his premises. These are not fair statements of either the terms or the legal effect of the statute. The personal right to engage in the traffic is not taken away from any person. True, it is made a misdemeanor for any one, for every person in the state, whether he be the owner of real estate or not, to engage in such traffic on the real property of another without the written consent of the latter.
This provision, however, does not apply (as will hereafter be shown) to lessees in possession under a lease executed before the passage of the act. The offense here created can bo com *414 mitted only by trespassers and tenants holding under leases executed subsequent to the passage of the law. A mere restriction upon the exercise of an admitted right, and we think a very reasonable restriction, when considered in connection with the first clause of this section, which makes the real estate upon which the traffic is conducted subject to the payment of the assessments imposed by the statute. To my mind, it is a palpable misnomer to call such a statute a prohibitory liquor law_; and unless it be such, no license or special privilege can be obtained under it, as was shown in Hipp’scase, supra. -
We think this statute is no more a license law than was section 2 of the Liquor Law of 1854, which provided, “ That it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians, or family physician.” Surely, it cannot be contended that that section granted a license to traffic in intoxicating liquors with minors.
Is the burden assessed by the first section of the statute in conflict with the 2d section of the 12th article of the constitution ? This provision of the constitution reads as follows : “ Laws shall be passed taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise ; and all real and personal property according to its true value in money.”
We are not disposed to question the correctness of the repeated decisions of this court, that the above section of the Constitution furnishes the governing principle for all laws levying* taxes for general revenue, whether for state, county, township or municipal purposes. It by no means follows, however, that no moneys can constitutionally come into the public revenues except such as are raised by such taxation. And it is equally well settled that burdens, in the form of license taxes, may be imposed upon certain classes of business which in their nature are injurious to the public welfare, and moneys thus raised are properly placed in the public revenues, although it would be in violation of section 2, Art 12, to impose such burdens merely for the purpose of raising public *415 revenue. (The authorities on these points are collected in State v. Hipp, supra, page 225.)
In our opinion it is not of the slightest materiality, under this section of the constitution, whether burdens imposed on business which in its nature is injurious to the public welfare, be imposed in the form of a license fee, or in some other form. If they be not imposed for the mere purpose of raising general revenue, § 2, art. 12 is not violated. It has not been claimed that the assessment imposed by section 1 of the statute, independent of other provisions of the statute could be regarded as a license fee. It cannot be affirmed that such impositions were for the mere purpose of raising general revenue. The declared object of the general assembly, as stated in the title of the, statute, was “ further to provide against evils resulting ” from the traffic in intoxicating liquors. The burden is imposed upon a business injurious to the public welfare. The raising of revenue is a mere incident to the main purpose of the statute. There is no conflict between the stalute and section 2, of article 12 of the constitution. Van Horn v. People, 46 Mich. 183; Youngblood v. Sexton, 32 Mich. 406.
It is also contended that section 2 of the statute, which makes the assessments imposed by section 1 on the business of trafficking in intoxicating liquors a lien on the real property on and in which the business is conducted, is in conflict with section 23 of article 2, and section 19, article 1 of the constitution. The first-named section inhibits the passage of laws impairing the obligation of contracts, and the latter provides “Private property shall ever be held inviolate, but subservient to the public welfare.”
The contention is that the obligation of contracts of lease entered into before the statute was passed and still subsisting is impaired by this section. We are not able to see wherein the obligation of such contracts is at all affected. The parties are still bound by all their covenants and agreements the same as if the statute had not been passed, and all remedies are preserved in tact. The rental values as well as the profits of the use of the property may, indeed, depreciate under the opera *416 tion of this statute, but such result furnishes no ground for declaring the act unconstitutional under section 23, article 2.
We think, however, that to subject the freehold to the payment of these assessments when made against a tenant for carrying on the business upon premises leased prior to the passage of the statute, would be an unwarrantable interference with private property — in other words, in effect, it is subjecting one man’s property to the payment of another’s debts. If this infirmity, however, can be taken out of the statute by applying it only to cases • arising under leases executed after the passage of the statute, it is our duty to so construe it. Every presumption must be taken in favor of the validity of statutes. It will be presumed that the legislative intent was to apply the statute to subsequent leasós only, if necessary to preserve it from constitutional objection. It will never be presumed that the legislature intended to pass an unconstitutional law.
'According to the terms of the statute, land upon which a trespasser may enter and carry on the traffic without the knowledge of the owner, is made subject to the lien. Surely such was not the intent of the general assembly. And upon the same theory, we do not believe that the intention was to subject the freehold of a lessor for assessments against the business of the lessee, over which the lessor had no control during the term, granted under a pre-existing lease.
And further, the penal provision, in the same section of the act, which, evidently, was inserted mainly for the protection of the lessor whose real estate was made subject to the lien of the assessment, certainly was not intended to be enforced, iu cases where the lien did not attach under the statute, to wit, in cases of pre-existing leases. In such cases, not only had the property passed from the control of the owner, by virtue of the prior lease, during the term, but, during the term, the absolute right of dominion had vested in the lessee ; and we do not think, that as between such parities, it was intended that the statute should interfere to any extent. Of course, as to subsequent leases, as well as to cases of trespass, *417 these considerations do not apply. As to them no property rights are violated by the statute.
It is also objected that the statute, being one of a general nature does not have a uniform operation throughout the state, in violation of section 26, article 2 of the constitution.
This objection cannot be maintained. The statute indeed is one of a general nature, but it has a uniform operation throughout the state.
There are some other objections made to the validity of the statute, but'we find none for which the statute should be adjudged unconstitutional.-
In State v. Frame, judgment for relator.
In Benner v. Bauder, judgment affirmed.
"W. "W. Johnson, C. J., who was absent during the oral argument, on account of sickness in his family, desires it to be noted that he was furnished with copies of the records and arguments as they were filed, and that after a full and careful consideration of the points involved, concurs in the decision.